UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMMY MARIE BARNES,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                Defendant. | Case No. C13-1291-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Tammy Marie Barnes seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) failing to find ostoarthrosis of the lower leg was a severe impairment at step two; (2) rejecting the opinions of testifying medical experts Alexander White, M.D., and William Weiss, Ph.D.; and (3) erroneously relying on Vocational Expert ("VE") testimony that conflicts with the Dictionary of Occupational Titles ("DOT"). Dkt. 11. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Ms. Barnes is currently 50 years old, has a high school education, and has worked as a

REPORT AND RECOMMENDATION - 1

food preparer/cashier, apartment groundskeeper, and a caretaker.[1]  On October 24, 2007, she applied for benefits, alleging disability as of July 1, 2006.  Tr. 24.  Her applications were denied initially and on reconsideration.  *Id.*  The ALJ conducted a hearing and found Ms. Barnes not disabled in a decision dated May 4, 2010.  *Id.*  Ms. Barnes appealed, and the Appeals Counsel vacated the May 4, 2010 hearing decision and remanded the case to the ALJ.  Tr.  153-55.  A second hearing was held on May 24, 2012.  Tr. 24.  The June 8, 2012 decision on that hearing found Ms. Barnes not disabled.  Tr. 24-50.  As the Appeals Council denied Ms. Barnes' request for review, the ALJ's June 8, 2012 decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Ms. Barnes had not engaged in substantial gainful activity since July 1, 2006, the alleged onset date.

**Step two:**  Ms. Barnes had the following severe impairments: status post tumor surgery; status post ankle fracture; degenerative changes of the left acromioclaviculor joint; and depression.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Ms. Barnes could perform a reduced range of light work with some restrictions, including only occasional reaching overhead and not more than two pounds overhead; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling with caution; and no climbing ladders, ropes, or scaffolds.  Ms. Barnes was limited to repetitive three-step tasks.

**Step four:**  Ms. Barnes could not perform her past work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Ms. Barnes can perform, she is not disabled.

Tr. 27-50.

---

[1] Tr. 61-62, 374.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

# DISCUSSION

**A.     The ALJ Did Not Err at Step Two**

At step two, the ALJ found:

> Although the claimant's 'chronic problem list' includes osteoarthrosis not otherwise specified (NOS) of the lower leg, the evidence in the medical record does not establish any severe impairment. In December 2009, the claimant had full range of motion in her knees bilaterally, and no joint deformity, heat, swelling, erythema or effusion bilaterally.

Tr. 28 (*citing* Tr. 1011). Ms. Barnes contends the ALJ should have included osteoarthrosis of the lower leg (hereinafter referred to as "osteoarthrosis") as a severe impairment. Dkt. 11 at 18. In specific, she argues the ALJ erred in dismissing her osteoarthrosis impairment because the citations in her record regarding osteoarthrosis pertain to her ankle, not her knee. *Id.* at 19.

Ms. Barnes has the burden of proof on two requirements at step two. She must show (1) that she has medically determinable impairments; and (2) that her medically determinable impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). Because the ALJ's decision does not clearly delineate between the two prongs, the Court addresses both and finds Ms. Barnes fails on both.

Osteoarthrosis first appears in Ms. Barnes' January 9, 2007 charts. Tr. 818. The condition is listed as a "chronic problem," with no further explanation. *See id*. Beyond that date, the condition remains in her charts in exactly the same manner: without explanation. *See generally* Tr. 765-1021.[4] Ms. Barnes contends that diagnosis of osteoarthrosis was established

---

[4] The Court notes that Ms. Barnes' charts from the same clinic contain a separate section, entitled "Assessment/Plan" or "A/P" that identifies the doctors' diagnoses for each visit. *See, e.g.,* Tr. 767 ("Assessment/Plan: Routine GYN exam (V72.31)"); Tr. 782 ("Assessment/Plan: sleep apnea, obstructive (327.23)…Rhinitis, allergic NEC (477.8)…Medication, adverse effects, unspec. (995.20)"); Tr. 811 ("Assessment/Plan: Pain in joint, shoulder (719.41),

by an x-ray of her ankle on March 17, 2006. Dkt. 11 at 19 (citing Tr. 899-900). According to her doctor, that x-ray indicated "arthritis and a bone spur." Tr. 899. Offering her own interpretation of the doctor's findings, Ms. Barnes contends they are "exactly the findings that characterize osteoarthrosis according to the U.S. National Library of Medicine's medical encyclopedia." Tr. 11 at 19.

While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). Ms. Barnes may offer a reasonable interpretation of the record, but the ALJ's conclusion was also reasonable. On this record, the Court cannot say the March 17, 2006 doctor's opinion diagnosed osteoarthrosis of the ankle. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (A medical opinion offered in support of an impairment must include symptoms and a diagnosis).[5] In fact, the record cuts *against* Ms. Barnes' interpretation of the evidence for two additional reasons: (1) the ten month delay between Ms. Barnes' initial diagnosis of arthritis of the ankle and the appearance of osteoarthrosis in her medical record weakens her position; and (2) she fails to direct the Court to, and the Court is not aware of, any chart mentioning Ms. Barnes' ankle in

---

chronic…Backache NOS (724.5), Acute"); Tr. 816 ("Assessment/Plan: Refilled meds…Low back pain (724.2), chronic"); Tr. 851 ("A/P: Sinusitis…Allergic rhinitis…Depression exacerbation…Chronic left shoulder pain…Elevate blood pressure"); Tr. 965 ("Assessment/Plan: Pain syndrome, chronic (338.4)…Hypertension, benign (401.1)"); Tr. 1017 ("Assessment/Plan: Upper respiratory infection, acute, NOS (465.9)").

[5] Though a single report on May 20, 2009 assesses "pain in the joint, ankle/foot," the assessment also notes "pt is only mildly bothered by sx at this time, so will ask pt to do ROM exercises at home, elevate and ice when needed and monitor for worsening. f/u 2 months and prn." Tr. 937 (record repeated at Tr. 981). Thus, even assuming this record weighs in favor of a finding of osteoarthrosis of the ankle, it fails at the second prong regarding severity, discussed *infra*.

REPORT AND RECOMMENDATION - 4

its "chronic problems" list. *See* Tr. 765-1021.

Even assuming Ms. Barnes could show osteoarthrosis is a medically determinable impairment, she has not shown the impairment is severe. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Social Security Ruling 85–28). Ms. Barnes must make a threshold showing that her medically determinable impairments limit her ability to perform basic work activities. *See Bowen*, 482 U.S. at 145; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

Ms. Barnes makes no argument that her symptoms resulted in any work-related limitations. She instead speculates, without citation to the record, that pain and decreased range of motion in her foot and ankle would "inevitably…compound her difficulties with balancing."[6] Dkt. 11 at 19-20. The omission is fatal to her argument. The Commissioner contends Ms. Barnes told her doctors she was "only mildly bothered" by her symptoms and that her pain was mild to moderate. Dkt. 17 at 3 (*citing* Tr. 628, 981); *see also* Tr. 38. The Court agrees. Ms. Barnes also told a consulting doctor her pain was a "6/10 on the pain scale" but that it was "moderately relieved with Tylenol Number 3." Tr. 624; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (responding favorably to conservative treatment undermines a claimant's reports regarding the disabling nature of his pain). The doctor also found Ms. Barnes did not require the use of an assistive device, and further opined she had full range of motion in

---

[6] Ms. Barnes' suggestion is further eroded by the Court's recommendation that the ALJ's rejection of Dr. White's testimony regarding her balance issues, discussed *infra*, should be affirmed.

REPORT AND RECOMMENDATION - 5

her ankle. Tr. 624, 628. Having failed to meet her burden of proof at step two, the Court recommends affirming the ALJ's step two findings.

**B.     The ALJ Did Not Err in Rejecting the Testifying Medical Experts' Opinions**

Ms. Barnes contends the ALJ erred in considering the opinions of nonexamining, testifying medical experts Alexander White, M.D., and psychologist William Weiss, Ph.D. "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1101-02 (9th Cir. 2008). An ALJ may properly reject an opinion of any physician that is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The Court finds the ALJ's reasons for rejecting these opinions are supported by substantial evidence in the record and are therefore not in error. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (ALJ's decision may only be disturbed if it is not supported by substantial evidence or is based upon legal error).

**1.     Dr. Alexander White, M.D.**

Ms. Barnes challenges the ALJ's rejection of Dr. White's testimony regarding balance as a limitation. Dkt. 11 at 21-22. The ALJ concluded the evidence in the record "was insufficient to establish balance difficulties as significantly limiting as Dr. White suggests."[7] Tr. 44. Ms. Barnes first argues that in evaluating inconsistencies between Dr. White's testimony and the record, the ALJ erroneously focused on two Romberg tests she performed in January and August 2009, thereby ignoring other evidence of balance tests she performed. Dkt. 11 at 21-22 (*citing* Tr. 44, 994, 998). The record shows Ms. Barnes was "unable to do" pronator drift, Romberg

---

[7] In giving his testimony little weight, the ALJ rejected Dr. White's opinion that Ms. Barnes was limited to the sedentary exertional level, Tr. 43, and instead found she could perform a reduced range of light work with some limitations, Tr. 33.

REPORT AND RECOMMENDATION - 6

test, and heel-toe walking during the January evaluation, Tr. 998, but that she experienced only "some difficulty" doing the same in August 2009 and her balance was improving due to physical therapy, Tr. 944.

Contrary to Ms. Barnes' assertions, there is no indication the ALJ focused only on the Romberg tests she performed during those evaluations, as his decision refers to all three types of tests. Tr. 38, 44. Rather, the ALJ found Ms. Barnes "retained the capacity for standing and walking in a normal, nonhazardous workplace," but she should not balance "in a dangerous manner, such as on a stool, ladder, chair, or similarly." Tr. 44. In making this determination, the ALJ cited a lack of support in the record for Ms. Barnes' balance concerns, evidenced by her two evaluations in 2009 and by the fact she did not seek treatment for her balance in 2010 or beyond.[8] Tr. 39, 44. Though Ms. Barnes attempts to boost her case by pointing to two additional medical reports, they are not persuasive. *See* Dkt. 11 at 22 (*citing* Tr. 665, 673). Of these, only the April 2008 evaluation contains any discussion of balance testing, providing "Patient demonstrates difficulty with balance, particularly when trying to make a turn. Unstable Romberg." *See* Tr. 673. The other evaluation is inapposite, noting "She is slightly wobbly today *secondary to the sedation from the MRI*." Tr. 666 (emphasis added). This record provides no indication that Ms. Barnes performed any balance tests or that any deficiencies pertaining to balance were even due to a recurrent condition. Thus, all of the evidence Ms. Barnes submits regarding balance testing is limited to just three records between April 2008 and August 2009, with the final report indicating she was seeking treatment and getting better.

Ms. Barnes also suggests the ALJ improperly discounted Romberg testing, arguing the

---

[8] The ALJ also observed that at her second hearing, Ms. Barnes testified she had a cane but forgot to bring it to the hearing, and she did not report any difficulty walking without it. Tr. 39. Ms. Barnes does not address this finding.

REPORT AND RECOMMENDATION - 7

ALJ "fail[ed] to grasp" the implications of a Romberg test when he stated "it is not customary for people to stand up with their eyes closed." Dkt. 11 at 21 (*citing* Tr. 43). The Court is also perplexed as to the ALJ's intent here. However, to the extent, if any, the ALJ's treatment of Romberg testing was in error, the error was harmless because the ALJ's assessment that there was "minimal evidence of balance concerns" in the record still holds water. *See* Tr. 43-44. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (error harmless where it does not "negate the validity of the ALJ's ultimate conclusion").

Finally, Ms. Barnes asserts the ALJ erroneously disregarded Dr. White's reliance on her documented subjective complaints of balance issues, which she argues were extensive.[9] Dkt. 11 at 22. She identifies eight records in support of her contention that there are "records of numerous visits at which Ms. Barnes indeed complained of balance issues." Dkt. 11 at 22 (*citing* Tr. 665, 669, 673, 980, 983, 990, 994, 998). Of these, Tr. 673, 994, and 998 do not contain any subjective complaints. They are the same records she identifies as showing objective balance testing.[10] Tr. 665 and 669 say nothing about Ms. Barnes' balance issues. The three remaining records, Tr. 980, 983, and 993, are not dispositive of the balance question. The January 19, 2009 report states Ms. Barnes' recurring tumor was "causing balance problems." Tr. 990. A March 18, 2009 report states Ms. Barnes "saw ENT doctor and was sent to a 'balance' doctor who told her her balance was good and recommended PT. Pt has appt for PT next week. Pt still feels

---

[9] The ALJ also discounted Mr. White's opinion regarding Ms. Barnes' balance issues because the doctor's opinion "was based upon the claimant's alleged difficulties with balance," Tr. 43-44, allegations the ALJ had already determined were not credible, Tr. 38-39. Because Ms. Barnes does not assign error to this finding and because she does not contest the ALJ's credibility determinations, the Court does not decide whether an ALJ may properly reject a testifying, nonexamining physician's opinion by questioning the credibility of a plaintiff's complaints where the doctor does not discredit those complaints.

[10] Tr. 994 and 998 are also the exact records considered by the ALJ as objective evidence and discussed *supra*. Tr. 44.

REPORT AND RECOMMENDATION - 8

dizzy and falls occasionally." Tr. 983. The May 20, 2009 report notes only that Ms. Barnes is "positive for dizziness." Tr. 980.

On this record, the Court finds the ALJ's rejection of Dr. White's opinion is supported by substantial evidence in the record. Ms. Barnes has not met her burden to show harmful error. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (court may not reverse unless error is harmful, and claimant has burden of showing harm). As the Court may not simply reweigh the evidence and substitute its own judgment for that of the ALJ, the Court recommends the decision rejecting Dr. White's opinion be affirmed.

**2.     William Weiss, Ph.D.**

Ms. Barnes assigns error to the ALJ's treatment of medical expert William Weiss, Ph.D., in two ways: by disregarding his inclusion of Ms. Barnes' GAF scores at step three, and by rejecting his medical opinion.

The ALJ's rejection of Ms. Barnes' GAF scores is legal error.[11] The ALJ's explanation for his rejection consists of his assessment that GAF scores, "which [are] a lazy way to approach analysis of a case record," are irrelevant. Tr. 46. The ALJ's discussion amounts to a determination that, as a matter of course, GAF scores should be ignored. *Id.* The discussion is purely suppositional and is at odds with the Social Security regulations. A GAF score that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the record, including medical source opinions, 20 C.F.R. §§ 404.1545(a), 416.945(e). As such, the regulations indicate that GAF scores are relevant evidence that should be considered in the five-step evaluation in light of the entire

---

[11] The Court notes that Ms. Barnes does not challenge the ALJ's disregard for GAF scores beyond step three and accordingly does not address any potential resulting harm.

REPORT AND RECOMMENDATION - 9

record.

In the context in which Ms. Barnes assigns error, however, it is not clear the error was harmful. Ms Barnes contends the ALJ erred in rejecting Mr. Weiss' consideration of GAF scores in determining whether Ms. Barnes' impairments met or equaled Listing 12.04. Tr. 11 at 14. Under Listing 12.04B, Ms. Barnes must prove her impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 12.04B. The ALJ found Ms. Barnes had mild restrictions of activities in daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 31-32. Mr. Weiss agreed with this assessment without consideration of Ms. Barnes' GAF scores, but found she met the listing if her GAF scores were factored into the assessment. Tr. 115. Ms. Barnes does not challenge these assessments in the absence of her GAF scores but argues the GAF scores should not have been disregarded at step three. Dkt. 11 at 14-18.

Ms. Barnes' argument presupposes GAF scores establish marked limitations sufficient to meet Listing 12.04. As a general matter, a GAF score is not dispositive of mental disability for social security purposes. *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (*citing* Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed.Reg. 50746, 50764–50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings.")); *see also Gutierrez v. Astrue*, No. 12–cv–1390 MEJ, 2013 WL 2468344, at *19 (N.D.Cal. June 7, 2013) ("A GAF score of 50 does not necessarily establish an impairment seriously interfering with the claimant's

REPORT AND RECOMMENDATION - 10

ability to perform basic work activities."). Accordingly, Ms. Barnes has not satisfied her burden of establishing harm. *See Molina*, 674 F.3d at 1111 (court may not reverse unless error is harmful, and claimant has burden of showing harm).

Ms. Barnes' argument also ignores the fact that the ALJ rejected Mr. Weiss' opinions for more than one reason. The ALJ gave two additional valid reasons for rejecting Mr. Weiss' opinions.[12] The ALJ discounted Mr. Weiss' opinions because they lacked any basis in the record. Tr. 45-46. Mr. Weiss testified that Ms. Barnes would have difficulty performing repetitive three-step tasks and she would need significant training in order to be able to carry out such tasks. Tr. 45, 115. He also opined Ms. Barnes would have significant limitations getting along with coworkers, because her depression "would cause her to have low energy" and would "cause some stresses." Tr. 45, 116. The record does not support these assessments. In July 2008, consulting psychologist Anita Person, Ph.D., opined Ms. Barnes could "persist at repetitive 3-step tasks on a regular basis," and that she could "usually sustain appropriate social interactions with coworkers and supervisors, except during times of personal crisis." Tr. 696. Additionally, Mr. Weiss testified Ms. Barnes had a somatoform disorder, a finding the ALJ asserts has never been diagnosed. Tr. 29 (*citing* Tr. 114). Ms. Barnes does not contest this point.

The ALJ also found Mr. Weiss' opinion inconsistent with "the minimal mental health treatment the claimant has engaged in…and with her mild findings during that minimal treatment." Tr. 46. The ALJ's citations to the record on this topic are extensive. On September

---

[12] The ALJ also gave an additional invalid reason for rejecting Dr. Weiss' opinions. The ALJ rejected Mr. Weiss' opinions because he believed the expert relied on Ms. Barnes' subjective reports made during the hearing, which he found incredible. Tr. 46. The argument fails. There is nothing in the transcript of the hearing to suggest Mr. Weiss relied on Ms. Barnes' testimony. *See* Tr. 114-116. Mr. Weiss cites to a single medical record regarding depression and pain disorder, to Dr. White's testimony regarding somatoform disorder, and then engages in a discussion about Global Assessment of Functioning ("GAF") scores. *Id*. Ms. Barnes' testimony during the hearing spoke to none of those. *See* Tr. 99-105.

REPORT AND RECOMMENDATION - 11

19, 2008, Ms. Barnes told a psychiatric provider she came for services "because her lawyer recommended it as part of their case for social security disability." Tr. 36 (*citing* Tr. 775). The provider also noted one year had lapsed since Ms. Barnes' last visit, that she was responding well to medications and had "greatly improved in emotional stability," and that no further services would be offered. *Id*. The ALJ also noted that Ms. Barnes was authorized for a full year of mental health services beginning May 2010, but she only engaged in therapy for half the year. Tr. 37 (*citing* Tr. 1024). Over the course of eleven sessions in that half year, Ms. Barnes' provider noted she was "doing OK" or "doing well" in half of them. Tr. 37 (*citing* Tr. 1038, 1040, 1041, 1042, 1046). In her remaining sessions, the ALJ observed, Ms. Barnes' provider indicated she was "maintaining level," as opposed to deteriorating or improving. Tr. 37 (*citing* 1036, 1037, 1039, 1043, 1044, 1045). Ms. Barnes' last mental exam on November 2, 2010 notes she was "doing well." Tr. 37 (*citing* Tr. 1046). The ALJ also observed that between November 2008 and October 2009, Ms. Barnes was found on a number occasions to be in "no apparent distress," demonstrating "no unusual anxiety or evidence of depression." Tr. 36-37 (*citing* Tr. 931, 937, 939, 944, 949); *see also* Tr. 973, 984, 991, 1019, 1021. On other occasions, Ms. Barnes' providers observed her "affect is normal"; that she had "normal insight, exhibits normal judgment"; that her mood was appropriate; and that she had "no sadness or nervousness." Tr. 36 (*citing* 1017, 1014); *see also* Tr. 964.

In sum, Ms. Barnes failed to establish that she was prejudiced by the ALJ's treatment of her GAF scores at step three and his rejection of Dr. Weiss' opinions. Although the reasons the ALJ gave to discount Mr. Weiss' opinions are not error free, the Court concludes the ALJ's errors were harmless. This is because despite the errors, substantial evidence supports the remaining valid reasons the ALJ gave, and thus the ALJ's errors do not negate the validity of the

REPORT AND RECOMMENDATION - 12

his ultimate determination that Mr. Weiss' opinions should be given limited weight. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Court thus recommends the ALJ's rejection of Mr. Weiss' opinions be affirmed.

**A. The ALJ Erred at Step Five**

Ms. Barnes next challenges the ALJ's step-five findings on the grounds that the VE testimony conflicts with the DOT. Dkt. 11 at 23; *see also Massachi v. Astrue*, 486 F.3d 1149, 1152–54 (9th Cir. 2007) (holding that an ALJ may rely on VE testimony that conflicts with the DOT only if the conflict is reasonably explained). At the hearing, the ALJ posed a hypothetical which included overhead reaching limitations. Tr. 117 ("This person is left hand dominant and with the left hand can only occasionally reach overhead, but cannot lift overhead weight in excess of two pounds."). The VE opined a person with Ms. Barnes' limitations could perform the alternative jobs of small products assembler, DOT 739.687-030, and inspector and hand packager, DOT 559.687-074. The ALJ did not ask the VE whether his testimony was consistent with the DOT. *See Massachi*, 486 F.3d at 1150 (ALJ has an affirmative duty to inquire as to whether a VE's testimony is consistent).

The ALJ's decision adopted the VE's findings, stating "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 47. Ms. Barnes asserts the ALJ erred in relying on the VE's testimony because it was inconsistent with the DOT, and because the ALJ did not ask the VE to provide a basis for the conflict. Dkt. 11 at 23. Specifically, Ms. Barnes contends the small products assembler and inspector and hand packager descriptions are inconsistent with her overhead reaching limitations. *Id.; see also* DOT 739.687-030 (constant reaching exists 2/3 of the time), DOT 559.687-074 (frequent reaching exists 1/3 to 2/3 of the time). The Commissioner

concedes "reaching" means "extending hand(s) and arms(s) in any direction," Dkt. 17 at 12 (*citing* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. C), but argues that no conflict exists between the VE's testimony and the DOT because neither job description requires "overhead reaching with both arms on a more-than-occasional basis." Dkt. 17 at 13. In support of this conclusion, the Commissioner speculates that the "DOT's general descriptions for [small products assembler and inspector and hand packager] do not include work activities involving frequent bilateral overhead reaching."

The Court disagrees with the Commissioner's conclusion. At step five, the burden shifts to the Commissioner to show that Ms. Barnes can perform other work that takes into consideration her residual functional capacity, age, education, and work experience. *See Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999). The Commissioner has not met that burden. Nothing in the DOT descriptions for small products assembler[13] and inspector and hand packager[14] suggests overheard reaching would not be inconsistent with Ms. Barnes' limitations, and the Commissioner has provided no evidence to resolve the question. Thus, it is not clear whether these jobs involve overhead reaching that would be precluded under the ALJ's

---

[13] The DOT states a claimant holding this position "Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters." DOT 739.687-030.

[14] The DOT states a claimant holding this position "Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches, discoloration, and flash, and discards defective products. Packs inspected product in cartons according to customer specifications, and carries cartons to storage area. May attach metal bands to bottle tops prior to packing to form necks for bottles and measure necks to ensure specified length, using gauge." DOT 559.687-074.

REPORT AND RECOMMENDATION - 14

hypothetical/RFC assessment.  Because the VE's testimony does not provide clarity on this point, there is at least a potential conflict between the VE's testimony and the DOT, and the ALJ's failure to expressly ask the VE whether his testimony was consistent with the DOT is not harmless.  On remand, the ALJ shall obtain additional VE testimony to support his step-five findings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ shall also obtain additional VE testimony to determine whether Ms. Barnes can perform representative jobs despite her overhead reaching limitations.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **March 5, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **March 6, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 19th day of February, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15

Case 2:13-cv-01291-JLR   Document 18   Filed 02/19/14   Page 16 of 16

REPORT AND RECOMMENDATION - 16